Filed 10/1/21  P. v. Mabry CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076171 |
| v. | (Super.Ct.No. CR37941) |
| TONY MABRY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Tony Mabry appeals from the trial court's order denying his petition for resentencing under Penal Code[1] section 1170.95. Defendant argues that because the jury was instructed under the natural and probable consequences doctrine, the trial court erred by failing to accept the representations in the petition as true and by making factual determinations without a hearing. He thus believes a remand is necessary for the trial court to issue an order to show cause and conduct an evidentiary hearing. Under the circumstances of this case, we find no error and affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.      *Factual Background*[2]

A Perris police officer, Herbert Ellison, testified that he was on routine patrol in an integrated neighborhood at 11:30 p.m. on September 27, 1990, when he observed a parked car, a Toyota, with the trunk open. He also noticed a pickup truck with a camper shell immediately behind the parked car. The pickup had its keys in the ignition. No other people were in the area. He looked in the open trunk of the car and saw a box of bullets. While waiting to be told if the vehicle was stolen, he heard several shots being fired nearby. He reported the shots and then heard a burst of automatic weapons fire. He then withdrew to a nearby vantage point to await assistance. He then saw a person on a

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

[2] The factual background is taken verbatim from this court's nonpublished opinion in defendant's prior direct appeal, case No. E009598. (*People v. Mabry & Lenoir* (Sept. 16, 1992, E009598) [nonpub. opn.] (*Mabry I*).) This opinion is attached to defendant's request for judicial notice, which we granted, as exhibit A.

motor scooter speeding away from the area. He pursued the scooter but lost it when it went through some fields and an area where the patrol car could not go.

Two other officers arrived at a home in the area of the shooting and found a man lying dead on the floor of a garage. Another officer testified that he was securing the area when a neighbor, Mr. Kinser, approached and told him that a man was in Mr. Kinser's fenced and locked patio. The patio was located next to an alley which runs behind the residence involved in the shooting, and the patio was surrounded by a six- to eight-foot fence. The officer looked over the fence and saw defendant Lenoir sitting in the patio. Defendant Lenoir was ordered to come out of the patio and was handcuffed. The officers then entered the patio and saw defendant Mabry hiding. After defendant Mabry was secured, the patio was searched and two weapons, a holster, and a wallet were found. One weapon, a .30-caliber carbine, was found five to seven feet from defendant Mabry. The second weapon was a .25-caliber semiautomatic handgun. It was found about three to five feet away from the place where defendant Lenoir had been sitting.

Mr. Kinser testified that he was walking into the alley when he heard the gunshots and saw three men running in the alley. One of the men fired two shots at him. Later, after the police arrived, a neighbor told him that someone was in his yard. Mr. Kinser relayed this information to a police officer.

A forensic pathologist testified that the victim had been shot three times, once with a .25-caliber bullet. The other two wounds were from a larger caliber gun, probably a rifle.

A criminalist testified that a bullet found near the victim was fired by the carbine found near defendant Mabry. The criminalist also testified that one of the casings found in the area of the killing was probably fired from the carbine. The markings on two other bullets indicated they could have been fired from the .25-caliber handgun found near defendant Lenoir. The trajectories of the bullet holes found in the home indicated the bullets could have been fired from the backyard of the home adjacent to the alley.

A possible motive for the shooting was provided by the daughter of the woman living in the home. She testified that she was barbecuing hamburgers in the backyard earlier in the evening of the shooting when two Black men, not defendants, came down the alley and asked if they could buy a hamburger from her. Her mother's boyfriend, not the victim, rudely told the men to leave, using racial epithets. The men left peaceably.

Defendant Mabry testified that his co-defendant, Lenoir, convinced him to go to Perris that evening in the pickup truck to meet some women friends of Lenoir. He denied any knowledge of the Toyota vehicle. He admitted being in the alley with Lenoir when they heard shots. He saw two or three people running up the alley towards them, and he heard people yelling racial epithets. They climbed a fence and ended up in someone's backyard. He denied being armed or ever seeing the weapons before the preliminary hearing. Despite his denial that he had gone around the front of the pickup truck, near the open trunk of the car, defendant Mabry's fingerprints were found on the hood of the pickup truck.

B.     *Procedural Background*

Defendants Mabry and Lenoir were convicted of first degree murder (§ 187), being ex-felons in possession of firearms (former § 12021), and shooting at an inhabited dwelling (§ 246).  The jury also found true that they each used a firearm (§ 12022.5) in the commission of the murder and shooting counts.  The trial court sentenced defendant to an indeterminate term of 25 years to life on the murder charge and a consecutive determinate term on the other charges.

Defendant appealed the conviction, asserting, among other issues, that the trial court erred in instructing the jury with the natural and probable consequences principles.  We agreed because the prosecutor did not rely on this theory of liability and the jury was not told that the target crime was firing at an inhabited dwelling.  Nonetheless, we found the error to be harmless.  We stated that "[t]he jury found both defendants guilty of first degree murder, and found that both defendants personally used firearms in the commission of the murder."  We further explained that "[c]riminal liability was clearly not premised on a derivative aiding and abetting theory, but rather on a direct finding that each defendant had used the weapon found next to him to commit a premediated killing."  Thus, we affirmed the conviction and remanded the matter for resentencing of both defendants.

On August 15, 2019, following the enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437), defendant filed a petition for resentencing under section 1170.95.  In the petition, defendant averred that a complaint or

5

information had been filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; he had been convicted of murder under one of those theories; and he could not now be convicted of murder based on the changes made to section 188 and 189 by Senate Bill 1437. Defendant also checked boxes stating, in conclusory language, that he was not the actual killer; that he did not, with the intent to kill, aid or abet the actual killer; and that he was not a major participant in the felony acting with reckless indifference to human life. He requested the trial court appoint him counsel in the proceeding, which the court did.

The People filed a response arguing that defendant was ineligible for relief because section 1170.95 was unconstitutional. Defendant's appointed counsel filed a reply.

On October 30, 2020, following argument from counsel, the trial court denied the petition, finding defendant was ineligible for relief. The court explained its ruling by quoting from this court's opinion. In pertinent part, the court stated, " 'The jury found both defendants guilty of first degree murder, and found that both defendants personally used firearms in the commission of the murder. Criminal liability was clearly not premised on a derivative aiding and abetting theory, but rather on a direct finding that each defendant had used the weapon found next to him to commit a premeditated killing. . . . [I]t is of no importance that the instructions on aiding and abetting could in theory have been construed not to require a finding that the defendant actually killed,

attempted to kill, or intended to kill. The evidence received leaves no doubt that the jury's verdict rested on a finding that the defendant killed or intended to kill. Consistently with this reasoning, we have affirmed judgments despite analogous claims of instructional error when the jury has specially found that the defendant personally used a firearm, and when such a finding has necessarily implied that the jury believed the defendant was the actual killer. [¶] . . . In this case, it was not defendant's theory that was rejected by the jury, but rather the prosecutor's own rather tenuous theory that was never even presented to the jury.' "

The trial court also considered the "spirit of [Senate Bill] 1437" and concluded that it did not apply here since this court "determined that the evidence supporting [the] actual killer theory is not only well supported, but the only rational supported thing." The court determined that defendant "could indeed have been convicted on the theory of murder as it exists as of January 1, 2019." Thus, defendant had failed to make a prima facie showing that he was eligible for relief under section 1170.95 and the court denied the petition based on the appellate record. The court reiterated that "because there has been a court of appeals that has reviewed this very issue," there was no "rational chance that the jury rested their opinion on the natural and probable consequences theory."

II

DISCUSSION

Defendant contends the trial court erred in denying his section 1170.95 petition without an evidentiary hearing because he had made a prima facie showing in his petition

7

that he was convicted of first degree murder under the natural and probable consequences doctrine or the felony-murder rule. He further asserts the court "improperly engaged in judicial factfinding by denying the petition at the second prima facie stage" based on this court's prior opinion from his direct appeal "without conducting an evidentiary hearing." The People respond the trial court did not err because it correctly concluded defendant, as an actual killer, was ineligible for relief as a matter of law.

Effective January 1, 2019, the Legislature enacted Senate Bill 1437 (2017-2018 Reg. Sess.) which amended sections 188 and 189 to limit liability for felony murder and abrogate the natural and probable consequences doctrine as applied to murder. (Stats. 2018, ch. 1015.) The bill redefined murder under section 188 to require that the principal acted with malice aforethought. Now, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The bill also amended section 189 to provide that a defendant who was not the actual killer and did not have intent to kill is not liable for felony murder unless he or she "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3).)

Senate Bill 1437 also enacted section 1170.95. To obtain relief pursuant to section 1170.95, an offender must file a petition in the sentencing court setting forth his eligibility under the section, including that he was prosecuted under a theory of felony murder or murder under the natural and probable consequences doctrine, was convicted of first or second degree murder following a trial or accepted a plea offer in lieu of a trial

8

at which the petitioner could be convicted for first or second degree murder, but could not be convicted of first or second degree murder because of changes to section 188 or 189 made effective January 1, 2019. (§ 1170.95, subds. (a)(1)-(3); see § 1170.95, subd. (b)(1)(A).) If a petition fails to comply with subdivision (b)(1), "the court may deny the petition without prejudice to the filing of another petition . . . ." (§ 1170.95, subd. (b)(2).) "Where the petition complies with subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. [Citation.] [¶] If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] . . . At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 960 (*Lewis*).)

Prior to our Supreme Court's recent decision in *Lewis*, a number of courts "read . . . section 1170.95, subdivision (c)'s two references to 'a prima facie showing' to require two distinct, sequential inquiries: one 'that petitioner "falls within the provisions" of the statute,' and a second ' "that he or she is entitled to relief." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 961.) The *Lewis* court rejected this interpretation of

9

section 1170.95, subdivision (c), and concluded that subdivision (c) describes only a single prima facie showing. (*Ibid*.) The court held that "[c]onsidering subdivision (c)'s language in the context of section 1170.95 as a whole [citation], subdivision (c) clearly describes a single process." (*Id*. at p. 962.) Therefore, under the statute, once a petitioner files a facially sufficient petition laying out his or her eligibility under the section and requests counsel, he or she is entitled to appointment of counsel and to be heard on the subdivision (c) inquiry. (*Id*. at p. 970.)

In determining whether the petition has made a prima facie showing, after counsel has been appointed, the trial court may examine the record of conviction "to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition,"

10

then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid*.)

As part of its review, the court may consult the record of conviction in the case, including any prior appellate opinion, subject to the caveat that "the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.) The "trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Ibid*.) "In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under [section 1170.95,] subdivision (c)." (*Ibid*.)

In this case, the trial court denied defendant's petition at the prima facie stage under section 1170.95, subdivision (c). "A denial at that stage is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law.' [Citations.] This is a purely legal conclusion, which we review de novo." (*People v. Murillo* (2020) 54 Cal.App.5th 160, 167, review granted Nov. 18, 2020, S264978; accord, *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1137, 1142, review granted Oct. 14, 2020, S264284.)

Defendant here filed a petition laying out his facial eligibility and the trial court correctly appointed counsel. The parties filed several rounds of briefing and the court did conduct a hearing. At the hearing, the trial court, relying on this court's prior opinion from defendant's direct appeal, concluded defendant was ineligible for relief as a matter

11

of law because he was an actual killer.  The prior appellate opinion discloses that defendant was convicted under the theory that he was an actual perpetrator who personally fired a gun at the victim and committed the murder with malice.  In light of the jury's firearm finding, our opinion from defendant's direct appeal concluded that defendant's "[c]riminal liability was clearly not premised on a derivative aiding and abetting theory, but rather on a direct finding that each defendant had used the weapon found next to him to commit a premeditated killing."  Quoting *People v. Mason* (1991) 52 Cal.3d 909, 952, we explained that " '[T]he evidence received leave[s] no doubt that the jury's verdict rested on a finding that the defendant killed or intended to kill.' "

Accordingly, we determined that instructing the jury with the natural and probable consequences principles was harmless.  We stated, "the jury ha[d] specifically found that the defendant personally used a firearm, . . . such a finding has necessarily implied that the jury believed the defendant was the actual killer."  Given the undisputed jury finding that defendant personally used a firearm in the commission of first degree murder and the prior appellate opinion showing defendant was convicted as an actual killer, defendant was ineligible for relief as a matter of law.  (See *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410 [reviewing court concluded the jury implicitly found the defendant was the actual killer because it found he personally and intentionally used a firearm to commit the crime, rendering the statutory changes inapplicable to him].)

12

The trial court here did not impermissibly engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.) The court also did not evaluate the sufficiency of the evidence. (*Id*. at p. 974.) Rather, the court quoted our opinion from defendant's direct appeal in finding defendant ineligible for relief as a matter of law. While defendant's petition asserted facts which, if accepted as true, fulfilled the requirements for relief, there were readily ascertainable facts from the record demonstrating that, as a matter of law, he was not entitled to relief. Therefore, the trial court did not err by not issuing an order to show cause and holding an evidentiary hearing prior to ruling on the merits of defendant's petition.

## III

## DISPOSITION

The order denying defendant's section 1170.95 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____

P. J.

We concur:

McKINSTER_____

J.

FIELDS_____

J.